UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

    Plaintiff,

        v.

CRISTIAN QUINTERO FELIX,

    Defendant.
_____/

No. CR 13-633 PJH

**ORDER DENYING MOTION FOR RECONSIDERATION OF JURY INSTRUCTION ON 21 U.S.C. § 860 AND DENYING DEFENDANT'S REQUEST FOR FURTHER PRODUCTION OF *BRADY* AND *GIGLIO* MATERIALS**

I.    Motion for Reconsideration

    Defendant Cristian Quintero Felix has filed a motion for reconsideration of the court's pretrial ruling on the jury instruction on the 21 U.S.C. § 860 offense. The government filed an opposition, and the matter is submitted on the briefs. The court DENIES defendant's motion for reconsideration on the following grounds.

    First, defendant has not addressed the weight of circuit authority holding that § 860 does not require a showing of specific intent to distribute within the protected school zone, other than to point out that *Martin* was a per curiam decision. *United States v. Martin*, 544 F.3d 456, 460 (2d Cir. 2008) (per curiam); *United States v. Harris*, 313 F.3d 1228, 1239 (10th Cir. 2002) ("the government must prove that the defendant possessed illegal drugs within 1,000 feet of a school and intended to distribute them *somewhere*"); *United States v. Ortiz*, 146 F.3d 25, 29 (1st Cir. 1998) (enhanced penalty under § 860(a) applies to a defendant who with intent to distribute possesses narcotics in a school zone even if he or she intends to distribute the drugs there or elsewhere); *United States v. Lloyd*, 10 F.3d 1197, 1218 (6th Cir. 1993) ("the jury did not need to find an intent on [the defendant's] part

to deliver drugs within 1000 feet of the school"); *United States v. McDonald*, 991 F.2d 866, 868 (D.C. Cir. 1993) (citing *United States v. Rodriguez*, 961 F.2d 1089 (3d Cir. 1992) ("Since the actus reus for this offense is possession, it follows that possession of the drugs, not the intended location for distribution, must be located within 1000 feet of a school.")); *United States v. Wake*, 948 F.2d 1422 (5th Cir. 1991)).  In particular, defendant overlooks the Second Circuit's well-reasoned analysis in *Martin,* finding that the text of the schoolyard statute is unambiguous and rejecting the defendant's contention that there is no legislative history explicitly providing that the statute was intended to prohibit possession, without more, within the designated areas:

> The schoolyard statute was first enacted in 1984 and, at that time, proscribed only the distribution of drugs within one thousand feet of a school.  See 21 U.S.C. § 845(a) (1985) (now 21 U.S.C. § 860). In 1988, Congress amended the statute to include "possession with intent to distribute" to the list of offenses covered by the statute. See Pub.L. No. 100-690, § 6457, 102 Stat. 4181, 4373 (1988).  At the time of the amendment, Senator Biden submitted an analysis of the amendment on behalf of the Senate Judiciary Committee, of which he was chair, in which he stated that the offense had been added "so that the enhanced penalties would apply to someone apprehended near a school with a quantity of drugs sufficient to indicate an intention to distribute." 134 Cong. Rec. S17,360, S17,365 (daily ed. Nov. 10, 1988) (statement of Sen. Biden).  The Defendants deflect Senator Biden's statement by arguing that it was intended to describe a drug dealer apprehended just before he distributed a large amount of narcotics within one thousand feet of a school. Nothing in the senator's comments, however, either evokes such an image of, or expressly limits § 860(a)'s reach to, situations in which the distribution will necessarily occur within the prohibited area. The Defendants' argument on this point is equally unavailing.

*Martin*, 544 F.3d at 459-60.  *See United States v. Pitts*, 908 F.2d 458, 461 (9th Cir. 1990) (adopting the reasoning of *United States v. Falu*, 776 F.2d 46, 49 (2d Cir. 1985), to hold that the schoolyard statute does not require a showing that the defendant must be aware of his proximity to a school).

Second, there is no persuasive authority in support of defendant's proposed instruction, as seven circuits are in accord with *Martin* and no circuit has yet adopted defendant's view.  For circuit authority, defendant relies solely on the Eleventh Circuit's pattern jury instruction requiring a finding that "the Defendant intended to distribute the

2

substance at some place within 1,000 feet of a school," which does not cite case law in support of the instruction. Although the government's objection to defendant's proposed jury instruction raised the absence of Eleventh Circuit authority to support the pattern instruction, defendant fails to address this point. See doc. no. 110 at 3. In attempting to distinguish *McDonald*, where, in affirming the conviction, the D.C. Circuit held that the district court erred by requiring the government to prove intent to distribute within the protected zone, but that the error caused no harm to the defendant, 991 F.2d at 871, defendant reiterates his argument that the holding of *McDonald* should be limited because the D.C. district court subsequently distinguished *McDonald* on the facts and required the government to show intent to distribute within the school zone where the defendant's proximity to the school zone at the time of his arrest was a function of when the police chose to confront him. See doc. no. 91 at 5 (citing *United States v. Alston*, 832 F. Supp. 1, 7 (D.D.C. 1993) (acknowledging that while it was bound by the D.C. Circuit's decision in *McDonald*, "the facts of this case are significantly different from the facts of *McDonald*, and the cases and hypotheticals cited therein")). The court does not find the reasoning of *Alston,* nor defendant's arguments, to be persuasive.

      The district court cases on which defendant relies are neither controlling nor persuasive under the weight of circuit authority, particularly in light of the circuit decisions that criticized those holdings. In *Rodriguez*, then-Circuit Judge Alito criticized the district court rulings that required a showing of intent to distribute within the school zone, particularly by applying the rule of lenity, because the Third Circuit found that the schoolyard statute is unambiguous and that the rule of lenity does not apply. 961 F.2d at 1094 (citing *United States v. Roberts*, 735 F. Supp. 537, 542-43 (S.D.N.Y. 1990); *United States v. Liranzo*, 729 F.Supp. 1012, 1014 (S.D.N.Y. 1990)). The First Circuit also criticized the district courts' rulings in *Testa*, *Liranzo* and *Coates*, reasoning that "[i]f we require proof of intent to distribute only within the school zone, as these district courts did, the statute would exclude many cases where the presence of drugs, in fact, increased the risk of harm to students." *Ortiz*, 146 F.3d at 29 (citing *United States v. Testa*, 768 F.Supp.

3

221, 222 (N.D.Ill. 1991); *Liranzo*, supra; *United States v. Coates*, 739 F. Supp. 146, 153 (S.D.N.Y.1990)).  Furthermore, as the government points out, those district court cases holding that the schoolyard statute required intent to distribute within the protected zone are distinguishable under the factual circumstances presented, in that those cases involved defendants traveling through or at a transportation hub.

Third, the jury instruction on the § 860 charge, as adopted by the court, does not violate defendant's rights under *Apprendi v. New Jersey,* 530 U.S. 466 (2000).  In arguing for reconsideration of whether the government must prove intent to distribute within 1,000 feet of a school, defense counsel raises a new argument that the § 860 charge doubles the statutory maximum sentence here, such that *Apprendi* requires that the jury find, beyond a reasonable doubt, that he possessed cocaine with intent to distribute within 1,000 feet of a school.  The § 860 instruction adopted by the court, No. 45, does satisfy *Apprendi* by requiring the jury to find that defendant possessed cocaine within 1,000 feet of a school, a factual element that increases the penalty.  Defendant's argument assumes that there must also be a finding of intent to distribute in the school zone, but as discussed above, the court elects to follow the overwhelming circuit authority holding that § 860 does not require a finding of specific intent to distribute within the school zone to trigger the increased penalty.  Defendant offers no authority requiring the government to prove intent to distribute within the protected school zone, rather than proving that he possessed cocaine within 1,000 feet of a school, as well as proving that he knew that it was cocaine or some other prohibited drug and that he intended to distribute the cocaine to another person.  Defendant's motion for reconsideration is therefore DENIED.

II.      Request for Further Production of *Brady* and *Giglio* Materials

Defendant seeks further *Brady* and *Giglio* disclosures on the grounds that the government's disclosures of criminal records on informant Francisco Navarro are incomplete and fail to provide information about Navarro's relationship with the Oakland Police Department ("OPD") prior to his working with Homeland Security Investigations ("HSI").  *See Giglio v. United States*, 405 U.S. 150 (1972); *Brady v. Maryland*, 373 U.S. 83

4

(1963). Specifically, defendant seeks information about Navarro's criminal history and arrests; his HSI benefits and deactivation; his criminal acts while acting as an informant, and his work, activation, deactivation and benefits received from OPD as an informant. Doc. no. 168. In ordering the parties to file briefs on defendant's request for further disclosures, the court instructed the parties to cite authority regarding the government's *Brady* and *Giglio* obligations with respect to an informant that is called by the defense, not the government, to testify at trial. Defendant cites no authority extending the government's disclosure obligations to a witness who is called by the defense.

After the court denied defendant's first motion to suppress and first request to disclose information regarding the informant, doc. no. 20, defendant filed a subsequent motion to confirm identity of informant and disclose *Brady* information, doc. no. 48. Based on defendant's representations, in sealed filings not disclosed to the government, that the informant's testimony would be critical to his defense at trial, and that defendant already knew who the informant likely was, the court determined that defendant made a sufficient showing of need under *Roviaro v. United States*, 353 U.S. 53, 59-61 (1957), for the informant's identity with respect to the informant's anticipated testimony that would support the defense theory that defendant was not carrying the firearms in furtherance of drug trafficking. The court determined, however, that defendant's showing with respect to the need for the informant's testimony to support his theory that he did not possess the drugs with intent to distribute was speculative. Accordingly, at the motion hearing on May 21, 2014, the court ordered that the government disclose the identity and whereabouts of the informant at least 14 days before commencement of trial. The court denied defendant's request for a pretrial interview with the informant and request to order the government to produce the informant at trial.

With respect to defendant's motion to disclose *Brady* information, the court recognized that the government had not yet identified any exculpatory information with respect to the informant under its *Brady* obligations, given that the government, which was not privy to defense theories, was not aware of any exculpatory value to disclosing the

informant's identity. To address the government's argument that defendant's request for *Giglio* information was premature, the court also held, at the May 21, 2014 motion hearing, that defendant was not entitled to impeachment information about the informant under *Giglio* until the informant testified.

It is undisputed that the government has not called Navarro as a witness at trial. In a sealed filing in advance of trial, defense counsel sought an order authorizing issuance of an ex parte subpoena commanding the appearance of Francisco Navarro at trial. After learning of Navarro's incarceration, defense counsel sought a writ of habeas corpus ad testificandum, which the court issued. Doc. no. 129. By letter dated November 9, 2014, in anticipation of Navarro's testimony and in compliance with the court's earlier ruling on defendant's motion for disclosure of informant identity and of exculpatory and impeachment information, the government provided defense counsel with *Giglio* information regarding Navarro's activation and deactivation as a confidential informant for HSI, compensation, probation status at the time he was a confidential informant, prior felony conviction, and provision of credible and reliable information. The government further disclosed that Navarro was known to provide credible and reliable information to OPD, but that the government did not have specifics of his association with OPD. Doc. no. 168-1. On November 10, 2014, defendant called Navarro, who was represented by counsel, to testify at trial.

Defendant now argues that the government has not satisfied its *Brady* and *Giglio* obligations. As the government has articulated, *Brady* is a self-executing obligation on the prosecutor to "disclose information favorable to the defense that meets the appropriate standard of materiality." *United States v. Little*, 753 F.2d 1420, 1440 (9th Cir. 1984). *See United States v. Jennings*, 960 F.2d 1488, 1490 (9th Cir. 1992) ("There is no question that the AUSA prosecuting a case is responsible for compliance with the dictates of *Brady* and its progeny."). With respect to impeachment materials, defendant does not cite any authority to support his contention that the government's disclosure obligations under *Giglio* include impeachment materials related to a **defense** witness. "To be material under

6

*Brady/Giglio*, 'undisclosed information or evidence acquired through that information must be admissible,' *United States v. Kennedy*, 890 F.2d 1056, 1059 (9th Cir. 1989), or capable of being used 'to impeach **a government witness**,' *United States v. Price*, 566 F.3d 900, 911-12 (9th Cir. 2009)." *United States v. Kohring*, 637 F.3d 895, 903 (9th Cir. 2011) (emphasis added). *See United States v. Bagley*, 473 U.S. 667, 676 (1985) (holding that impeachment evidence, as well as exculpatory evidence, falls within the *Brady* rule, where "the prosecutor failed to disclose evidence that the defense might have used to impeach **the Government's witnesses** by showing bias or interest") (emphasis added). Defendant cites authority recognizing the government's disclosure obligations with respect to informants who are called by the government to testify at trial. These cases do not hold that *Giglio* requires the government to produce impeachment material concerning informants who are called by the defendant.

Although the Ninth Circuit has not ruled on the issue whether *Giglio* obligations extend to witnesses whom the government does not call at trial, several circuit courts have held that the *Giglio* obligation to disclose impeachment materials does not extend to defense witnesses, apart from the *Brady* obligation to disclose exculpatory evidence. *See United States v. Souffront*, 338 F.3d 809, 824 (7th Cir. 2003) ("Impeaching the testimony of their own witness is not favorable to the defense, and does not raise the probability of a different verdict.") (citations omitted); *United States v. Green*, 178 F.3d 1099, 1109 (10th Cir. 1999) (holding that *Giglio* does not apply to confidential informant that the government did not call as a witness and that *Brady* was not implicated where the defendant did not identify any particular exculpatory evidence that the government failed to disclose); *United States v. Mullins*, 22 F.3d 1365, 1372 (6th Cir. 1994) (recognizing that *Brady* does not distinguish between evidence which serves to impeach a government witness' credibility and evidence which is directly exculpatory of the defendant, but finding "no authority that the government must disclose promises of immunity made to individuals the government does not have testify at trial" where the evidence is not "favorable to the accused").

In light of this persuasive authority, the court holds that the government is under no *Giglio* obligation to provide impeachment material with respect to Navarro. To the extent that the *Brady* obligation exists beyond the reach of *Giglio*, the government represents that they have made all disclosures under *Brady*. Doc. no. 169. Given that Navarro has now testified at trial and the government has already disclosed potential impeachment information that was within its possession and control, there is no basis for doubting the government's compliance with its *Brady* obligations to date.

In ordering the government to disclose impeachment material once Navarro had testified, the court relied on the representations about the informant's expected testimony, over five months before trial commenced, and erred by not limiting its ruling to the scope of the government's obligations under *Giglio.* To the extent that the court's earlier ruling is construed as extending *Giglio* to require the government to disclose impeachment evidence concerning an informant who is called as a defense witness, the court WITHDRAWS that portion of the ruling on defendant's motion to disclose all exculpatory and impeachment information.

**IT IS SO ORDERED.**

Dated:  November 12, 2014

_____
PHYLLIS J. HAMILTON
United States District Judge