UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>   Plaintiff,<br><br>     v.<br><br>CRISTIAN QUINTERO FELIX,<br><br>   Defendant.<br>_____/ | No. CR 13-633 PJH<br><br>**ORDER DENYING MOTION TO SET ASIDE VERDICT AND MOTION FOR NEW TRIAL** |

Defendant Cristian Quintero Felix has filed a motion to set aside verdict under Fed. R. Crim. P. 29(c) and, in the alternative, a motion for new trial under Fed. R. Crim. P. 33. The government timely filed an opposition, and defendant filed a reply. The matter is submitted on the briefs. For the reasons discussed below, defendant's motion to set aside verdict and motion for new trial are DENIED.

**I. Motion to Set Aside Verdict**

Defendant contends that the evidence presented at trial was insufficient with respect to both counts, that is, possessing cocaine with intent to distribute in a school zone, in violation of 21 U.S.C. § 860, and using or carrying a firearm in relation to a drug trafficking crime, or possessing a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c).

  **A. Legal Standard**

Rule 29 provides that "the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). On a challenge to the sufficiency of evidence to support a criminal

conviction, the relevant inquiry is whether "'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Nevils*, 598 F.3d 1158, 1163-64 (9th Cir. 2010) (en banc) (quoting *Jackson v. Virginia*, 443 U.S. 307, 324 (1979)). "Further, all reasonable inferences are to be drawn in favor of the government, and any conflicts in the evidence are to be resolved in favor of the jury's verdict." *United States v. Alvarez-Valenzuela*, 231 F.3d 1198, 1201-02 (9th Cir. 2000) (citing *United States v. Laykin*, 886 F.2d 1534,1539 (9th Cir. 1989)).

### B.   Section 860 Count

Defendant contends that the evidence was insufficient to support the § 860 conviction because the government failed to prove that St. Elizabeth's High School was operational at the time of the offense. Mot. at 2-3. Defendant concedes that the school need not be in session at the time of the offense to support a conviction, but cites out of circuit authority for the principle that the government must prove that the distribution took place within 1000 feet of "an actual" or "operating" school, "not just a school building that is no longer (or not yet) in use as a school." *United States v. Hawkins*, 104 F.3d 437, 440–41 (D.C. Cir. 1997). The Ninth Circuit has not adopted this requirement that the school must be operable to support a conviction under § 860. Even if school operability were an element of the offense, the evidence at trial supported an inference that the building across the street from the convenience store where defendant was arrested was operating as a school.

In *Hawkins*, the court of appeals found it sufficient that an officer "testified that [the defendant's] drug offenses occurred within 1,000 feet of the Garnett-Patterson Junior High School[,] . . . a middle school." 104 F.3d at 441. There, the court held that "a reasonable juror could take the [officer's use of the] word 'school' to refer to an operating school." *Id*. *See also United States v. Battle*, 613 F.3d 258, 265-66 (D.C. Cir. 2010) (holding that detective's testimony repeatedly referring to the specific name of the school or "the school,"

and photograph showing school fence, event sign and child exiting building were sufficient to show it was an operating school).

Defendant suggests that the government failed to introduce testimony from a school or church official to establish that the building was actually functioning as a school in July 2013, and therefore did not do enough to meet its burden of proof. Defendant does not suggest that the school was not functioning as a school at the time of the offense, and there was no evidence to suggest that the school was not operational. Further, as defendant concedes, Officer Garcia referred to the specific school at issue, testifying that he previously attended St. Elizabeth's, that St. Elizabeth's had a high school as well as a middle school and church, and that he knew the area well. Furthermore, the government displayed a photo of the school with the school's name in front of the building, and defendant objected to the government's use of photos showing children playing in front of the middle school and a photo dated October 9, 2014, showing notices of upcoming events on the school's marquee. Doc. no. 119. Moreover, defendant did not request that the jury be instructed that it had to find that St. Elizabeth's High School was operable. Defendant's separately proffered instruction, doc. no. 99 at 53, omits any requirement for operability. As in *Hawkins*, a reasonable juror could infer that the officer's statements about the school referred to an operating school, without the corroborating testimony of a school official. The evidence presented at trial was sufficient for a reasonable juror to conclude that the offense occurred within 1,000 feet of an operating school.

### C. Section 924(c) Count

Defendant contends that even if the evidence were sufficient to sustain a conviction on Count One, no rational juror could have found that defendant either used and carried the firearms "during and in relation to" a drug trafficking crime, or knowingly possessed the guns "in furtherance of" a drug trafficking crime to sustain Count Two, because the evidence was insufficient to show that the gun facilitated or was in furtherance of the crime. Defendant reiterates the unpersuasive arguments made at trial regarding the inferences to be made from the evidence: (1) although he did not dispute that he sold small quantities of

3

drugs to friends to support his own drug habit, there was no need for a gun to further such drug sales; (2) the guns in his possession were either inoperable or broken, and therefore would not facilitate or further drug trafficking; (3) the guns were in defendant's backpack and not readily accessible, so that it would not be reasonable to infer that defendant used the guns to protect his small stash of cocaine from possible theft; and (4) the evidence demonstrated that just prior to his arrest, defendant showed a gun to the confidential informant, Navarro, who was known to fence firearms and stolen property, to establish that defendant was "hoping to interest" Navarro in taking, fencing or buying the gun, not that defendant was carrying a gun to facilitate or further drug dealing.

    As the verdict indicates, the jury rejected the defense arguments that defendant just happened to be carrying the guns in the same backpack with 14 prepackaged baggies of cocaine, and that the guns had no connection to drug trafficking because the bindles of cocaine were for his own personal use. Even in the absence of evidence that defendant attempted to sell drugs to anyone on the day of his arrest, the evidence that defendant showed the informant a gun, rather than showing him drugs, does not support defendant's argument that the only reasonable conclusion to be made was that defendant was not dealing drugs. At trial, there was testimony that defendant showed one of the firearms to the informant only a few hours before his arrest. Defendant argues that he showed the defendant a broken gun, "clearly suggesting by his actions and words that he was trying to get rid of that gun through Navarro," the informant. Reply at 8. A rational juror could reasonably conclude from the evidence that even if defendant tried to sell the inoperable Beretta handgun to the informant, defendant did not offer to sell the Titan, and that defendant carried the Titan for protection when he was selling or distributing drugs. The evidence at trial showed that the Titan was fully loaded with seven rounds, including one round in the chamber, and the ATF expert testified that although the Titan misfired during several rounds of test-firing, the gun had to be fully loaded to operate. Both of the handguns were readily accessible: the guns were found in a backpack, which defendant carried over his shoulders and where defendant also kept the prepackaged baggies of

4

drugs. *See United States v. Lopez*, 477 F.3d 1110, 1115 (9th Cir. 2007) (nexus between the gun discovered and drug trafficking crime exists if the firearm was "readily accessible" during the commission of the drug crime) (citation omitted); *United States v. Long*, 301 F.3d 1095, 1106 (9th Cir. 2002) ("In *Muscarello*, the U.S. Supreme Court broadly ruled that 'carry' was not limited to the carrying of firearms on the person, and held that an individual who knowingly possesses a firearm in the locked glove compartment or trunk of his car 'carries' the firearm for the purposes of 18 U.S.C. § 924(c)(1).") (citing *Muscarello v. United States*, 524 U.S. 125, 127-28 (1998)). Both the government's expert and defense expert testified that the drugs were packaged in a manner that was consistent with sales, and that the firearms could be used to facilitate drug sales and for protection. Defendant's backpack also contained a large quantity of additional unused baggies, similar to the baggies containing the prepackaged cocaine.

Defendant suggests that the evidence showed only that he was a drug addict who possessed the drugs for personal use, not for sale. Defendant argues that there was evidence at trial that he sold small user amounts only to friends when he partied to help support his habit, which suggests that selling to friends is not proscribed by statute. But the jury instruction on the distribution count told the jury it should find defendant guilty if he intended to distribute to another even "without any financial interest in the transaction." Therefore, the drugs found in defendant's backpack packaged in a manner suggesting that they were for sale, coupled with evidence from his own witness that defendant sold small quantities to him on multiple occasions, was sufficient to establish intent to distribute.

As further evidence of drug trafficking, the government put on evidence that defendant sent a text message ("whats up bro what you got on deck I got people with money right now") a few hours before his arrest, which, according to both experts, appeared to be a request to a supplier for more drugs because he had people with money who were ready to buy. There was also evidence that defendant's backpack also contained lactose and inositol, which both the government's expert and defense expert testified could be used to cut drugs, although defendant points out that the defense expert

5

testified that the cocaine seized from defendant was cut with some other cutting agent, and that the inositol bottle contained heroin, not cocaine, residue. Reply at 4 and n.1. Furthermore, a few hours before his arrest, defendant showed a gun to Navarro, the informant, and also told Navarro that he had "powder" online if he needed it. Considering all the evidence of a nexus between the firearms and drug trafficking to support the § 924(c) conviction, this was not a "borderline case" where mere possession of firearms was supplemented only by expert testimony that drug traffickers often carry firearms. *See U.S. v. Krouse*, 370 F.3d 965, 967 (9th Cir. 2004).

Viewed in the light most favorable to the prosecution, the evidence presented at trial is adequate to allow a rational juror to find defendant guilty of using and carrying the firearms during and in relation to a drug trafficking crime, or knowingly possessing the guns in furtherance of a drug trafficking crime, beyond a reasonable doubt.

**II.     Motion for New Trial**

   **A.     Legal Standard**

Rule 33 provides that a court "may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). "A district court's power to grant a motion for a new trial is much broader than its power to grant a motion for judgment of acquittal." *United States v. Alston*, 974 F.2d 1206, 1211-12 (9th Cir. 1992) (citing former 3 Charles Alan Wright, Federal Practice and Procedure § 553 at 245 (1982)). "The district court need not view the evidence in the light most favorable to the verdict; it may weigh the evidence and in so doing evaluate for itself the credibility of the witnesses." *Id.* (citing *United States v. Lincoln*, 630 F.2d 1313, 1319 (8th Cir. 1980); *United States v. Indelicato*, 611 F.2d 376, 387 (1st Cir. 1979)). "If the court concludes that, despite the abstract sufficiency of the evidence to sustain the verdict, the evidence preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred, it may set aside the verdict, grant a new trial, and submit the issues for determination by another jury." *Id.* at 1211-12 (citing *Lincoln*, 630 F.2d at 1319).

### B.     Sufficiency of Evidence

Defendant argues that even if the court does not accept his arguments in support of his Rule 29 motion that the evidence was insufficient to support the conviction on both counts, the evidence, viewed holistically, support the inferences that he advanced at trial.

#### 1.     Section 860 Count

With respect to Count One, defendant contends that he was an addict who possessed only a small amount of drugs, consistent with personal use, not for sale. Mot. at 7. However, the packets of cocaine found in his backpack were also consistent with packaging for sale, as the expert testimony at trial established. Defense witness Rayford testified that defendant previously sold him small amounts of drugs on multiple occasions in such packaging. The evidence that defendant also consumed drugs, which was not a matter in dispute, or that defendant did not possess money on the day of his arrest does not diminish the sufficiency of the evidence establishing that defendant intended to distribute the packaged cocaine to another person.

Defendant points out that there was no evidence that he was selling drugs on the day of his arrest or intended to sell in a school zone. It was not necessary, however, for the police to catch defendant in the act of selling drugs for a jury to conclude that defendant had packaged the drugs into individual user amounts for sale or distribution. Further, as the court ruled in the pretrial order, the government was not required to prove intent to sell in the protected school zone. Doc. no. 140 at 6. *See United States v. Martin*, 544 F.3d 456, 458-60 (2d Cir. 2008) (citing *United States v. Harris*, 313 F.3d 1228, 1239 (10th Cir. 2002); *United States v. Ortiz*, 146 F.3d 25, 28–30 (1st Cir. 1998); *United States v. Lloyd*, 10 F.3d 1197, 1218 (6th Cir. 1993); *United States v. McDonald*, 991 F.2d 866, 868-71 (D.C. Cir. 1993); *United States v. Rodriguez*, 961 F.2d 1089, 1090-95 (3d Cir. 1992); *United States v. Wake*, 948 F.2d 1422, 1429-34 (5th Cir. 1991); *United States v. Falu*, 776 F.2d 46, 50 (2d Cir. 1985)). *See also United States v. Pitts*, 908 F.2d 458, 459-61 (9th Cir. 1990) (citing *Falu*, 776 F.2d at 49-50).

In light of the evidence presented at defendant's trial, the court finds no basis for concern that a serious miscarriage of justice may have occurred so as to warrant a new trial on Count One.

### 2. Section 924(c) Count

Defendant contends that the weight of the proof in the government's Section 924(c) case, even if sufficient, leaves a strong doubt about defendant's guilt, given that he was found in possession of two inoperable handguns and mismatched ammunition, with user quantities of drugs in a backpack. Defendant contends that it is "little more than speculation" to tie the possession of the guns to any drug sales. Mot. at 8. The evidence at trial, however, supported a reasonable inference that even if defendant intended to sell one of the two handguns, he possessed the other handgun for protection as he carried a supply of drugs, no matter how arguably small the quantity of drugs may have been.

### 3. Informant

After calling the confidential informant to testify as a percipient witness, defendant challenges the informant's credibility and argues that his inconsistent statements give rise to enough doubt about defendant's guilt so as warrant a new trial. Mot. at 8. Defendant urges the court to evaluate the informant's credibility based on the fact that the informant changed his story at trial in two respects from what he had relayed to defense counsel and her investigator when they first contacted him before the trial. First, the informant, Navarro, testified that defendant told him on the day in question that defendant had drugs "on the line," presumably for sale. However, during the defense interview, Navarro told the defense that defendant never mentioned possessing drugs on that day. Second, defendant argues that during the defense interview of Navarro, Navarro told defense counsel and the investigator that when defendant showed him the gun, defendant said "Look what I got for you, niggas," which, defendant argues, supports the "defense theory" that defendant was offering to sell the gun to Navarro. Defense counsel's earlier filed declaration also states, however, that Navarro used the word "you" and "those" interchangeably when describing what defendant said to him. Apr. 23, 2014 Ex Parte Hansen Decl. at 4 and n.2 (filed under

8

1  seal).  In other words, defense counsel acknowledged that Navarro said that defendant told
2  him both "Look what I got for <u>you</u>, niggas," and "Look what I got for <u>those</u> niggas."
3  Defendant contends that "you, niggas" suggests that defendant wanted to sell the gun to
4  Navarro, but that the government argues that "those niggas" suggests that defendant had
5  the gun to use against others, presumably Navarro's fellow Norteno gang members.
6       At trial, called by the defense, Navarro testified on direct that on the day in question,
7  defendant showed him a gun, but he did not testify that defendant said anything about the
8  gun, and he was not asked by defense counsel whether defendant offered to sell the gun.
9  On cross-examination by the government, he testified that defendant had said to him, when
10 showing him the gun, "This is for them bitch ass niggas," and that defendant did <u>not</u> offer to
11 sell him the firearm.  On redirect by the defense, Navarro testified that defendant said
12 "Look what I got for you bitch ass niggas."  On re-cross, Navarro clarified that defendant
13 had said either "This is for them bitch ass niggas," or "This is for you bitch ass niggas," or
14 words to that effect.
15      Thus, both before and during trial, Navarro reported that defendant said that the
16 firearm was for both "you niggas" and "them" or "those niggas."  Defense counsel's April
17 23, 2014 ex parte declaration flatly contradicts her current argument in support of the
18 motion for new trial that Navarro "changed his story on the eve of trial to a version that was
19 more consistent with the government's theory of the case," Mot. at 8, and that the
20 government "used this 'defense' witness to elicit prejudicial gang-related information at trial,
21 chilling Mr. Quintero's ability to further question the witness on a potentially exculpatory
22 point, namely that Navarro understood that Mr. Quintero had the gun - before he wanted to
23 sell it through Navarro - for protection, not as a tool of drug trafficking."  Reply at 8.
24      Defendant contends that doubts about the informant's credibility merit a new trial.
25 Defendant has not, however, pointed to evidence that contradicts the informant's testimony
26 or renders his testimony unreliable.  The discussion above shows that there was no
27 contradiction in what the informant testified defendant said when he showed the gun to the
28 informant.  The only contradiction is between the informant's testimony that defendant said

9

he had drugs online and the defense investigator's testimony that the informant did not say that defendant had drugs. This purported discrepancy is not enough. Despite defendant's claims that he was denied critical impeachment and bias evidence, the record shows that the government provided impeachment evidence, including the informant's criminal history, conviction records and arrest records, before the informant testified. Furthermore, the defense questioned the informant about this impeachment material to cast doubts on his reliability and credibility during direct examination. It was only <u>after</u> the informant testified, and was impeached by the defense, that the court determined that the government did not have an obligation under *Giglio* to provide impeachment material for a defense witness, beyond the disclosures required under *Brady.*

In weighing the evidence on defendant's motion for new trial, the court notes that the government did not call the informant as a witness, and the strength of the government's case did not rely on the informant's testimony. As defendant acknowledges, defendant did not show the drugs in his backpack to the informant, and the informant did not mention seeing drugs in defendant's backpack when he tipped off the police. Mot. at 7. Furthermore, the government did not call the informant during its case in chief to testify about the presence of either guns or drugs in defendant's backpack; that fact was established by the testimony of the arresting officer. Rather, the informant was called by the defense, and he testified that he had previously used drugs with defendant. The informant then stated on cross-examination that defendant told him that he had "powder" online, suggesting that defendant offered to sell cocaine. Although defendant argues that the government used the informant's testimony as both a sword and a shield, Mot. at 8, the government's case did not hinge on the informant's testimony, particularly in light of the evidence that drugs and loaded guns (one of which was inoperable) were found in defendant's possession, that the cocaine was bundled in small user amounts consistent with sales, that defendant previously sold small amounts of drugs, and that defendant told police after his 2012 arrest that he carried a gun for protection after he was almost killed.

The court also notes that defendant overstated the importance of the informant's testimony for his defense when he sought disclosure of the informant's identity and other information in pretrial motions practice, as well as in the present motion for new trial. Defendant argues that the informant testified as to "critical and relevant points" which "bolstered Mr. Quintero's defense that he did not intend to sell the cocaine in his backpack because Mr. Quintero made no offer to sell the cocaine to this addict who was using cocaine at the same time that he was acting as a federal informant." Reply at 8. Notably, the informant did not testify that defendant offered to sell him a gun, as defense counsel proffered in support of the motion for disclosure of the informant's identity and for disclosure of *Brady/Giglio* information, as well as in her opening statement. Defendant now argues that the informant "changed his story as to what [defendant] said to him about the gun on the eve of trial, and his new statement was favorable to the government." Mot. at 8. The record demonstrates, however, that defense counsel was aware well before trial of the informant's inconsistent references to "you" or "those/them," in describing defendant showing him a gun. During side bar argument after the defense called the informant to testify, the court pointed out that defense counsel failed to ask the informant whether defendant offered to sell a gun to the informant or other Norteno gang members, in support of the defense theory of the case. Defense counsel responded that she had only recently discovered that the informant gave inconsistent statements as to whether defendant had offered the gun to "you" to indicate he was going to sell the gun, or "those" or "them" without specifically indicating who defendant was referring to, and decided not to open this line of questioning. As previously noted, defense counsel's explanation conflicts with her earlier representations to the court, in her sealed ex parte affidavit, that the informant interchangeably used the words "you" and "those" when describing what defendant said when he opened his backpack to reveal a handgun. Apr. 23, 2014 Ex Parte Hansen Decl. at 4 and n.2 (filed under seal). Given defense counsel's prior knowledge of these inconsistencies, the defense was not prejudiced by the informant's testimony on cross-examination. Though the informant's testimony during cross-examination may have

11

marginally supported the government's case, in light of the trial record, the weight of evidence of guilt did not depend on the informant's testimony, and the informant's credibility issues, which were explored at trial, do not present exceptional circumstances that warrant a new trial.

### C. Evidentiary and Procedural Errors

#### 1. Photo of Defendant Holding a Gun

Defendant contends that the court made several evidentiary and procedural errors that warrant a new trial. Defendant challenges the court's ruling permitting admission of Exhibit 21F, an undated photograph which had been deleted from defendant's cell phone, depicting defendant holding a gun (not one of the guns charged in this case) and holding up a middle finger while sitting behind a table showing a digital scale with a white powdery substance, pills, a fanned array of currency, and a small white bottle. Defendant contends that the court erred in allowing the government to use this photograph to show intent to distribute drugs and/or use a gun in furtherance of drug trafficking, extending its earlier ruling allowing the photo to be used for the limited purpose of showing that defendant had the opportunity to possess a firearm, planned and prepared to possess a firearm, had knowledge about firearms, and did not make a mistake in possessing a firearm.

Defendant argues that notwithstanding the limited purpose for its admission under Rule 404(b), the government used the photograph as pure propensity evidence, both in trial and in closing argument. Defendant contends that the government's improper use of the photograph was so prejudicial that the validity of the jury's verdict was undermined, citing *United States v. Hitt*, 981 F.2d 422, 423 (9th Cir. 1992) (photograph of gun exterior, shown with a dozen other weapons, had "exceedingly small" probative value on cross-examination of defense expert who opined about malfunction, where the photo gave absolutely no indication of internal wear, dirt or defect). Though "[i]t may be true that 'many people view weapons, especially guns, with fear and distrust,'" the photograph showing defendant holding one firearm was probative of intent, opportunity, knowledge, plan, preparation, and absence of mistake, and was not unduly prejudicial. *See United States v. Ogles*, 406 F.3d

12

586, 593 (9th Cir. 2005) (quoting *Hitt*, 981 F.2d at 424), *appeal dismissed on other grounds*, 440 F.3d 1095 (9th Cir. 2006) (en banc).  The court expressly instructed the jury that with respect to evidence of other crimes, acts or wrongs, such evidence may not be considered as evidence of guilt.  Defendant has not shown that this photo, subject to a limiting instruction, was not properly admitted pursuant to Rule 404(b).

### 2. Prior Arrest and Conviction

Defendant argues that the admission of his prior arrest and conviction under Rule 404(b) on the issues of knowledge and intent was improper because he was not convicted of drug trafficking or drug sales in the 2012 case.  With respect to the conviction records, the court explicitly ruled in the second pretrial order that the 2012 conviction was admissible pursuant to Rule 404(b) "only to show knowledge, but not intent to distribute." Doc. no. 152 at 8-9 (citing *United States v. Ramirez-Robles*, 386 F.3d 1234, 1242-43 (9th Cir. 2004)).  Similarly, defendant's prior conviction for possession of a concealed firearm was admissible under Rule 404(b) for the limited purpose of showing knowledge of firearms, but not intent to use firearms in furtherance of drug trafficking.  By contrast, the evidence obtained in connection with defendant's 2012 arrest was admitted as other act evidence for limited purposes under Rule 404(b), including intent to distribute narcotics and/or use firearms in furtherance of drug trafficking, as specified in the second pretrial order.  *Id.* at 2-3 (citing *United States v. Basinger*, 60 F.3d 1400, 1407 (9th Cir. 1995); *United States v. Lopez-Martinez*, 725 F.2d 471, 476 (9th Cir. 1984)) and 7-8.  Because the evidence was admitted for these limited purposes, and the jury was instructed accordingly, defendant has not demonstrated evidentiary error that would warrant a new trial.  *See United States v. Johnson*, 132 F.3d 1279, 1282 (9th Cir. 1997) ("So long as the evidence is offered for a proper purpose [pursuant to Rule 404(b)], such as to prove intent, the district court is accorded wide discretion in deciding whether to admit the evidence, and the test for admissibility is one of relevance.") (citing *Huddleston v. United States*, 485 U.S. 681, 687-88 (1988)).

13

Defendant also contends that the officer involved in the 2012 arrest was improperly permitted to give his opinion as an unnoticed expert that the gun and/or drugs seized in 2012 were connected to sales. Mot. at 11. Defendant cites *United States v. Vera*, 770 F.3d 1232, 1243 (9th Cir. 2014), where the court of appeals held that it was plain error for a law enforcement officer, who was involved in the investigation, to offer intermingled lay and expert testimony interpreting the defendants' recorded phone calls, without instructing the jury on how to evaluate the officer's opinions on drug jargon and drug quantity and without requiring an adequately specific foundation for those opinions. Because the errors in *Vera*, in combination, undermined confidence in the jury's drug quantity findings in a special verdict, the court of appeals vacated the special verdict and the sentences based on the drug quantity findings, but affirmed the remainder of the defendants' convictions. *Id*. at 1252-53.

Here, in contrast to *Vera*, where the officer gave expert testimony interpreting the meaning of code words used in recorded calls, the officer gave his lay opinion that the drugs and guns seized from defendant were connected to drug sales, having seen cocaine packaged in small bindles for sale on numerous occasions during his police work in Oakland. As an officer involved in the investigation leading to defendant's 2012 arrest, the witness was permitted to offer his lay opinion, based on his own observations. "Rule 701 requires lay opinion testimony to be '(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.'" *Vera*, 770 F.3d at 1242 (quoting Fed. R. Evid. 701). The inference that the drugs and guns were connected to drug sales is not a matter of specialized knowledge that requires the testimony of an expert, and the government was not required to establish a foundation for offering the officer as an expert pursuant to Rule 702. Furthermore, the jury was instructed on considering the credibility of witnesses, cautioning the jury against giving undue weight to any particular witness.

Defendant further contends that the court erred in admitting a photograph, Exhibit 61G, showing the 2012 evidence collected on a table, on the ground that it was cumulative of other photographs showing the individual seized items. Defendant also argues that the photograph was not the best evidence of what was seized in 2012 because most of the evidence had been destroyed, denying defendant his ability to confront this evidence at trial. The physical evidence of the drugs and firearm seized from defendant 2012 was not necessary, however, for the jury to "reasonably conclude that the act occurred and that the defendant was the actor." *Huddleston*, 485 U.S. at 689.

Defendant also contends that the photograph was misleading because it made it appear that the amount of marijuana was more than a personal use amount, and suggested that the items were connected to each other when they were seized from separate locations. Although defendant argues that cross-examination was not sufficient to repair the prejudicial impact of the photograph on the issue of intent, defense counsel had a full opportunity to point out any perceived inaccuracies and argue in closing about the amount of weight that should be given to the evidence.

To the extent that defendant reiterates his arguments challenging the 2012 arrest and seizure on Fourth Amendment grounds, as supplemented by testimony of the arresting officer, these arguments are rejected on the grounds set forth in the second pretrial order denying the motion to suppress evidence of the 2012 arrest. Doc. no. 152 at 1-7. The officer's testimony that he searched defendant's person to look for identification is not inconsistent with the police report establishing reasonable suspicion to conduct a pat-down search based on articulated concern for officer safety, as well as a search for identification, as more fully discussed in the second pretrial order.

### 3. *Brady* Materials

Defendant argues that the court erred by not requiring the government to turn over full *Brady* and *Giglio* materials on the informant, and by limiting defense counsel's ability to refer to the informant's grant of immunity and benefits. Defendant also argues that the government disingenuously stated that it granted immunity so that the informant could

testify for the defense, when the government was aware, based on the informant's previous statements, that the informant would incriminate defendant when called to testify as a defense witness.  Mot. at 12.

Defendant has not demonstrated that any of these purported errors requires a new trial in the interest of justice.  Under its *Brady* obligations, the government must disclose evidence that is favorable to the accused and material either to guilt or punishment.  *Brady v. Maryland*, 373 U.S. 83, 87 (1963).  Favorable evidence is "material" if there is a reasonable probability that disclosure of the evidence would have changed the outcome of the proceeding.  *United States v. Bagley*, 473 U.S. 667, 682 (1985).  Under *Bagley*, a "reasonable probability" is "a probability sufficient to undermine the confidence in the outcome."  *Id.* at 678.  In *Giglio*, the Supreme Court held that "impeachment evidence . . . as well as exculpatory evidence, falls within the *Brady* rule."  *United States v. Bagley*, 473 U.S. 667, 676 (quoting *Giglio v. United States*, 405 U.S. 150, 154 (1972)).  As more fully set forth in the order denying defendant's request for further production of *Brady* and *Giglio* materials, and as stated on the record, defendant has cited no settled authority extending the government's disclosure obligations under *Giglio*, apart from its *Brady* obligations, to an informant that is called to testify by the defense; furthermore, the government represented that it made all *Brady* disclosures related to the informant.

Defendant cites *In re Sealed Case*, 185 F.3d 887 (D.C. Cir. 1999), in support of his argument that the government must turn over full *Brady* and *Giglio* materials for its informant, even though he was called by the defense.  In *In re Sealed Case*, the D.C. Circuit expressly declined to address whether *Brady* requires the government to disclose potential impeachment evidence of a hostile defense witness.  185 F.3d at 889, 893. There, the court noted that the underlying reason that the defense sought information about the witness's relationship with the government was not to impeach the witness, but to use it as affirmative evidence of the defendant's own innocence of the charge that he was a felon in possession of a firearm, by showing that the witness planted the guns.  *Id.* at 893.  The record there demonstrated that the witness voluntarily revealed himself to defense counsel

16

1  before trial and told defense counsel that he planted the evidence in the defendant's
2  basement. *Id.* at 895.  The witness in *In re Sealed Case* also told the defense attorney that
3  he was cooperating with the police to work off his gun and drug case in the D.C. Superior
4  Court. *Id.* After noting that the defense only sought to impeach the witness after he
5  "flipped" and started testifying against the defendant, the court of appeals held that the
6  government had an obligation under *Brady* to search for and disclose the witness's
7  cooperation agreements, which might have given the witness motive to plant the weapons.
8  *Id.* at 894.

9        Here, by contrast, calling the informant to testify did not significantly advance the
10 defense.  Defendant did not contend, as in *In re Sealed Case*, that the informant planted
11 the guns in his backpack.  Even before the government was ordered to provide identifying
12 information about the informant, defendant had already identified the informant and only
13 sought confirmation that the person he suspected of being the informant that tipped
14 Oakland police that defendant was in possession of a handgun was actually the informant.
15 In seeking the informant's identifying information, defense counsel represented to the court
16 that the informant was a percipient witness who would support the defense theory that
17 defendant offered a gun for sale to rebut the government's theory that defendant carried
18 the firearms in relation to drug trafficking.  Rather than asking the informant questions that
19 would be in line with this purported defense theory, however, defense counsel probed into
20 the informant's relationship with law enforcement and sought to discredit him from the
21 outset, in an apparent attempt to characterize the informant as trying to appease law
22 enforcement by implicating others for his own benefit, and the defendant as his hapless
23 victim of circumstance.

24       Furthermore, defendant has not identified any exculpatory information that "would be
25 affirmatively favorable to his assertion of innocence," which the government failed to
26 disclose.  *In re Sealed Case*, 185 F.3d at 889.  Defendant does not dispute the
27 government's representation that the government provided potential *Brady* material about
28 the informant, including a letter to defense counsel indicating that the informant had partied

17

with defendant before; a letter stating that the informant indicated that when he saw defendant on the day of his arrest, defendant showed him a firearm and defendant said "this is for them bitch-ass niggas," without indicating to whom defendant was referring; and indication by the informant that defendant tried to get in with a Norteno clique and that some of them did not like him. Opp. at 9-10. Nor does defendant dispute the government's representation that it provided *Giglio* information about the informant before he testified, such as the informant's criminal history, conviction records, and arrest records, as well as providing a summary of *Giglio* materials from local law enforcement before the defense case concluded. Opp. at 10-11. Rather, defendant has identified two incriminating statements by the informant that he argues were newly elicited by the government on cross-examination: (1) that defendant intended to use a gun against others and (2) that defendant had cocaine on the line, presumably for sale. Mot. at 9. Defendant has not shown that this information was favorable to the defense or material under *Brady.*

Even assuming that there was error in the government's failure to disclose the informant's incriminating statements, or in the court's rulings limiting the use of impeachment material that the government previously disclosed, any such error was harmless, that is, "it is more probable than not that the error did not materially affect the verdict." *United States v. Morales*, 108 F.3d 1031, 1040 (9th Cir. 1997) (en banc). First, as noted above, defense counsel was previously aware of the informant's inconsistent use of "you" and "those/them" in recounting defendant's statements to him on July 12, 2013. To the extent that the informant's testimony may have been interpreted to implicate defendant's intent to use a gun against others, defense counsel was aware of that risk when calling the informant to testify. Furthermore, there was other evidence of defendant's intent to use a gun, which was more reliable and persuasive than the informant's testimony, particularly defendant's own statements about getting a gun for protection when he was arrested in 2012.

Second, there was undisputed evidence that defendant was in possession of cocaine at the time of his arrest and that the cocaine was packaged in small user amounts.

18

Even without relying on the informant's testimony that defendant said he had cocaine, the jury could reasonably infer that defendant possessed cocaine with the intent to sell, particularly given defendant's witness and friend's testimony that he had bought small quantities of cocaine from defendant on multiple occasions.

The record demonstrates that the informant was effectively impeached during the direct examination by the defense, so that there is no reasonable probability that the court's ruling restricting defense counsel's use of impeachment information during closing argument would have changed the outcome of the proceeding. Furthermore, the jury was instructed that it may consider evidence that Navarro had a prior conviction in deciding how much weight to give to his testimony. Doc. no. 179 at 14. Even if defendant had been able to argue in closing that the informant had received benefits and undermine what was left of the informant's credibility, the jury could have reasonably concluded from the other evidence, without relying on the informant's testimony, that defendant possessed cocaine with the intent to distribute within 1,000 feet of a school and that defendant used or carried a firearm in relation to, or possessed a firearm in furtherance of, drug trafficking. Furthermore, even if defendant had accomplished his stated purpose in calling the informant to testify about defendant's offer to sell a firearm to demonstrate lack of intent to possess the gun in furtherance of drug trafficking, there was no evidence that defendant also offered to sell the other firearm that was also found in his possession. The evidence showed that the Titan handgun was operable when fully loaded, and when it was found in defendant's backpack, the Titan was found fully loaded with a bullet in the chamber. Based on the evidence presented at trial, particularly photographs of the Titan and a photograph showing defendant posing with the Titan, it was reasonable to infer that defendant carried the Titan as his own personal firearm to protect himself and the drugs in his possession.

### III. CONCLUSION

For the reasons set forth above, defendant's motion to set aside the verdict and motion for new trial are DENIED. Having relied upon defense counsel's statements in the ex parte affidavit in support of the motion for disclosure of informant identity, and given the

19

absence of cause for protecting defense strategy from disclosure after the conclusion of trial, the court orders that the ex parte Hansen declaration dated April 23, 2014, be UNSEALED. The clerk is directed to unseal and file the April 23, 2014 Hansen declaration.

**IT IS SO ORDERED.**

Dated: December 23, 2014

_____
PHYLLIS J. HAMILTON
United States District Judge